163. Dean has attempted to and continue to attempt to obtain market power in the market for the purchase of fluid Grade A milk by fluid Grade A bottling plants in the Northeast market. Dean maintains a dominant position in the market for the purchase of fluid Grade A milk to fluid Grade A milk bottling plants in the Northeast. Dean has acted with the specific intent to obtain a monopsony and used and is using its market dominance in an attempt to eliminate competition from other bottlers of fluid Grade A milk.

164. Dean's attempt to monopsonize includes, but is not limited to, the following conduct: a) DFA created DMS with Dairylea to bring non-DFA members under DFA's control; b) With the assistance of DFA, which purchased 11 of Dean and Suiza's divested bottling plants, Dean and Suiza merged to form the largest process in the Northeast; c) Dean, DFA and DMS entered into and implemented long-term full-supply agreements to control Northeast dairy farmers' access to fluid Grade A milk bottling plants; d) Dean paid Stop & Shop to close down its bottling plant, thereby forcing St. Albans to join DMS to access bottling plants; e) DFA orchestrated a stock and CEO exchange between NDH and Hood in order to transfer bottling plants to, obtain an ownership interest in and enter into supply agreements with Hood; f) Defendants forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk bottling plants; g) Defendants forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk balancing plants; h) Defendants purchased fluid Grade A milk bottling plants, closed down fluid Grade A milk bottling plants and/or have refused to operate fluid Grade A milk bottling plants with the purpose and intent of further stifling competition in the Northeast; i) Defendants cut off Northeast dairy farmer's access to fluid Grade A milk bottling plants in the Northeast; j) Defendants boycotted dairy farmers, cooperatives, and fluid Grade A milk

bottlers that did not comply with Defendants' conspiracy in an effort to eliminate or control these entities as competitive outlets for dairy farmers' fluid Grade A milk; k) Through DMS, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast; and l) DFA and DMS established GNEMMA, and through GNEMMA, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast.

165.  Dean's scheme to monopsonize has had success in restricting, excluding and foreclosing competition, and there is a dangerous probability of success of Dean monopsonizing these markets.

166.  Dean's scheme and predatory acts in furtherance of this scheme to control the market for the purchase of fluid Grade A milk by bottling plants the Northeast United States constitutes attempted monopsonization in violation of Section 2 of the Sherman Act, and such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

167.  In the alternative, Defendants Dean, Hood and DFA collectively have attempted to and continue to attempt to obtain market power in the market for the purchase of fluid Grade A milk by fluid Grade A bottling plants in the Northeast market. Defendants Dean, Hood and DFA collectively maintain a dominant position in the market for the purchase of fluid Grade A milk to fluid Grade A milk bottling plants in the Northeast. Defendants Dean, Hood and DFA have acted with the specific intent to obtain a monopsony and used and are using their market dominance in an attempt to eliminate competition from other bottlers of fluid Grade A milk by engaging in predatory and unlawful conduct as described above. Defendants' scheme to

monopsonize has had success in restricting, excluding and foreclosing competition, and there is a dangerous probability of success of Defendants Dean, Hood and DFA monopsonizing these markets. Defendants' scheme and predatory acts in furtherance of this scheme to control the market for the purchase of fluid Grade A milk by bottling plants the Northeast United States constitutes attempted monopsonization in violation of Section 2 of the Sherman Act, and such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

168.  As a direct and proximate result of Dean's continuing violation of Section 2 of the Sherman Act, and/or Defendants Dean, Hood and DFA's continuing violation of Section 2 of the Sherman Act, Plaintiffs and class members have suffered injury and damages in an amount to be proven at trial.

169.  Plaintiffs, on behalf of themselves and other members of the class, seek money damages from Dean, and/or Defendants Dean, Hood and DFA, for these violations. These damages represent the additional amount Plaintiffs and other members of the class would have received for sales of fluid Grade A milk in the absence of the violations alleged. Damages may be quantified on a class-wide basis. These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

170.  Plaintiffs, on behalf of themselves and other members of the class, also seek injunctive relief. The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

COUNT IV
SHERMAN ACT SECTION 2 VIOLATION
Unlawful Monopolization

171. Plaintiffs incorporate by reference paragraphs 1 through 139 as if fully alleged herein.

172. The relevant geographic market is the Northeast United States, which is comprised of FMMO 1.

173. The relevant product market consists of the market for the marketing or sales of fluid Grade A milk to, or the purchase of fluid Grade A milk by, bottling plants.

174. DFA possesses monopoly power in the market for marketing and sales of fluid Grade A milk to fluid Grade A milk bottling plants in the Northeast market and has abused and continues to abuse that power to maintain and enhance its market dominance in the market for the marketing and sales of fluid Grade A milk to fluid Grade A milk bottling plants by unreasonably restraining trade, artificially and anti-competitively reducing the price of fluid Grade A milk sold by from Plaintiffs and members of the class, eliminating competition from rival cooperatives and independent dairy farmers, and foreclosing and excluding competitors from access to fluid Grade A milk bottling plants by engaging in predatory and unlawful conduct.

175. DFA's unlawful monopolization includes, but is not limited to, the following acts: a) DFA created DMS with Dairylea to bring non-DFA members under DFA's control; b) DFA, assisted the merger between Dean and Suiza by purchasing 11 of Dean and Suiza's divested bottling; c) Dean, DFA and DMS entered into and implemented long-term full-supply agreements to control Northeast dairy farmers' access to fluid Grade A milk bottling plants; d) Dean paid Stop & Shop to close down its bottling plant, thereby forcing St. Albans to join DMS

to access fluid Grade A milk bottling plants; e) DFA orchestrated a stock and CEO exchange between NDH and Hood in order to transfer bottling plants to, obtain an ownership interest in and enter into supply agreements with Hood; f) DFA forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk bottling plants; g) DFA forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk balancing plants; h) DFA purchased fluid Grade A milk bottling plants, closed down fluid Grade A milk bottling plants and/or have refused to operate fluid Grade A milk bottling plants with the purpose and intent of further stifling competition in the Northeast; i) DFA cut off Northeast dairy farmer's access to fluid Grade A milk bottling plants in the Northeast; j) DFA boycotted dairy farmers, cooperatives, and fluid Grade A milk bottlers that did not comply with Defendants' conspiracy in an effort to eliminate or control these entities as competitive outlets for dairy farmers' fluid Grade A milk; k) Through DMS, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast; and l) DFA and DMS established GNEMMA, and through GNEMMA, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast.

176.    As a direct and proximate result of DFA's continuing violation of Section 2 of the Sherman Act, Plaintiffs and class members have suffered injury and damages in an amount to be proven at trial.

177.    Plaintiffs, on behalf of themselves and other members of the class, seek money damages from DFA for these violations. These damages represent the additional amount Plaintiffs and other members of the class would have received for sales of Grade A milk in the

absence of the violations alleged. Damages may be quantified on a class-wide basis. These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

178.  Plaintiffs, on behalf of themselves and other members of the class, also seek injunctive relief. The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

COUNT V
SHERMAN ACT SECTION 2 VIOLATION
Unlawful Monopsony

179.  Plaintiffs incorporate by reference paragraphs 1 through 139 as if fully alleged herein.

180.  The relevant geographic market is the Northeast United States, which is comprised of FMMO 1.

181.  The relevant product market consists of the market for the marketing or sales of fluid Grade A milk to, or the purchase of fluid Grade A milk by, bottling plants.

182.  Dean possesses monopsony power in the market for the purchase of fluid Grade A milk by fluid Grade A milk bottling plants in the Northeast market and has abused and continues to abuse that power to maintain and enhance its market dominance in the market for the purchase of fluid Grade A milk by fluid Grade A milk bottling plants by unreasonably restraining trade, artificially and anti-competitively reducing the price of Grade A milk purchased from Plaintiffs and members of the class, eliminating competition from rival fluid Grade A milk bottlers and foreclosing and excluding competitors from the fluid Grade A milk bottling market by engaging in predatory and unlawful conduct.

183.  Dean's unlawful monopsonization includes, but is not limited to, the following conduct: a) With the assistance of DFA, which purchased 11 of Dean and Suiza's divested

bottling plants, Dean and Suiza merged to form the largest process in the Northeast; b) Dean, DFA and DMS entered into and implemented long-term full-supply agreements to control Northeast dairy farmers' access to fluid Grade A milk bottling plants; c) Dean paid Stop & Shop to close down its Readville bottling plant, thereby forcing St. Albans to join DMS to access fluid Grade A milk bottling plants; d) Dean forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk bottling plants; e) Dean forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk balancing plants; f) Dean purchased fluid Grade A milk bottling plants, closed down fluid Grade A milk bottling plants and/or have refused to operate fluid Grade A milk bottling plants with the purpose and intent of further stifling competition in the Northeast; g) Dean cut off Northeast dairy farmer's access to fluid Grade A milk bottling plants in the Northeast; h) Dean boycotted dairy farmers, cooperatives, and fluid Grade A milk bottlers that did not comply with Defendants' conspiracy in an effort to eliminate or control these entities as competitive outlets for dairy farmers' fluid Grade A milk; and i) Dean paid over-order premiums fixed by DFA and DMS to dairy farmers in the Northeast. Dean's conduct constitutes unlawful monopsonization, the unlawful use of predatory anti-competitive conduct in the relevant markets in violation of Section 2 of the Sherman Act, and such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

184.   As a direct and proximate result of Dean's continuing violation of Section 2 of the Sherman Act, Plaintiffs and class members have suffered injury and damages in an amount to be proven at trial.

185.  In the alternative, Defendants Dean, Hood and DFA collectively as fluid Grade A milk bottlers have abused their monopsony power to maintain and enhance their market dominance in the market for the purchase of fluid Grade A milk by fluid Grade A milk bottling plants by unreasonably restraining trade, artificially and anti-competitively reducing the price of Grade A milk purchased from Plaintiffs and members of the class, eliminating competition from rival fluid Grade A milk bottlers and foreclosing and excluding competitors from the fluid Grade A milk bottling market by engaging in predatory and unlawful conduct as described above. The effect of Defendants' monopsony has been to harm, disrupt and eliminate competition from fluid Grade A milk bottlers and independent dairy farmers and independent dairy cooperatives in the Northeast market.

186.  Defendants' conduct constitutes unlawful monopsonization and the unlawful use of predatory anti-competitive conduct in the relevant markets in violation of Section 2 of the Sherman Act, and such violation and the effects thereof are continuing and will continue unless injunctive relief is granted.

187.  Plaintiffs, on behalf of themselves and other members of the class, seek money damages from Dean or, in the alternative, from Defendants Dean, Hood and DFA for these violations. These damages represent the additional amount Plaintiffs and other members of the class would have received for sales of Grade A milk in the absence of the violations alleged. Damages may be quantified on a class-wide basis. These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

188.  Plaintiffs, on behalf of themselves and other members of the class, also seek injunctive relief. The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

## COUNT VI
## SHERMAN ACT SECTION 1 VIOLATION
### (Against DFA and DMS)

189.  Plaintiffs incorporate by reference paragraphs 1 through 139 as if fully alleged herein.

190.  During the Class Period, DFA, DMS and their coconspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of fluid Grade A milk in the Northeast in unreasonable restraint of trade and commerce.

191.  The contract, combination or conspiracy consisted of an agreement between DFA, DMS and their co-conspirators to fix, reduce, stabilize or maintain at artificially depressed values the over-order premiums paid to dairy farmers in the Northeast who marketed their fluid Grade milk through DMS and GNEMMA during the Class Period.

192.  In formulating and effectuating this conspiracy, DFA and DMS conducted meetings with members of DMS and members of GNEMMA, and during those meeting, the member cooperatives engaged in conversations in which they agreed to fix, reduce, stabilize or maintain at artificially depressed values the over-order premiums paid to dairy farmers in the Northeast for fluid Grade A milk marketed through DMS and GNEMMA during the Class Period.

193.  As a result of these agreements, Plaintiffs and class members have been forced to accept suppressed prices for sales of fluid Grade A milk to bottlers. But for the conspiracy alleged herein, fluid Grade A milk prices obtained by Plaintiffs and class members in the Northeast market would have been significantly higher.

194.  The Capper-Volstead Act grants dairy cooperatives antitrust immunity with respect to price-fixing agreements with other dairy cooperatives "provided, however, that such

associations are operated for the mutual benefit of the members thereof." 7 U.S.C. 291. During the Class Period, DFA was not operated for the mutual benefit of DFA members and was, therefore, outside the scope of Capper-Volstead's grant of antitrust immunity. DFA's management engaged in activities that reduced the over-order premiums distributed to DFA members in order to maximize revenue for processing operations and joint ventures. Upon information and belief, a significant portion of the profits from the processing operations and joint ventures were not distributed to DFA's members, but rather improperly distributed to DFA's management and outside business partners. Additionally, upon information and belief, during the Class Period, DFA operated with other structural deficiencies that rendered Capper-Volstead's grant of antitrust immunity inapplicable.

195.   The relevant geographic market is the Northeast United States, which is comprised of FMMO 1.

196.   The relevant product market consists of the market for the marketing or sales of fluid Grade A milk to, or the purchase of fluid Grade A milk by, bottling plants.

197.   As a direct and proximate result of DFA and DMS's past and continuing violation of Section 1 of the Sherman Act, as well as DFA and DMS's other unlawful conduct, Plaintiffs have suffered injury and damages in an amount to be proven at trial.

198.   Plaintiffs, on behalf of themselves and other members of the class, seek money damages from DFA and DMS for these violations. These damages represent the additional amount Plaintiffs and other members of the class would have received for sales of Grade A milk in the absence of the violations alleged. Damages may be quantified on a classwide basis. These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

199. Plaintiffs, on behalf of themselves and other members of the class, also seek injunctive relief. The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

## COUNT VII
## SHERMAN ACT SECTION 1 VIOLATION
## (Against All Defendants)

200. Plaintiffs incorporate by reference paragraphs 1 through 139 as if fully alleged herein.

201. During the Class Period, Defendants engaged in a continuing contract, combination or conspiracy with respect to the sale of fluid Grade A milk in the Northeast in unreasonable restraint of trade and commerce.

202. The contract, combination or conspiracy consisted of an agreement between Defendants to secure for DFA monopoly control over the supply of fluid Grade A milk in the Northeast to bottling plants in return for providing fluid Grade A milk priced at artificially depressed rates for Dean and Hood.

203. In furtherance of the contract, combination or conspiracy, Defendants have committed one or more of the following overt acts: a) DFA created DMS with Dairylea to bring non-DFA members under DFA's control; b) With the assistance of DFA, which purchased 11 of Dean and Suiza's divested bottling plants, Dean and Suiza merged to form the largest process in the Northeast; c) Dean, DFA and DMS entered into and implemented long-term full-supply agreements to control Northeast dairy farmers' access to fluid Grade A milk bottling plants; d) Dean paid Stop & Shop to close down its bottling plant, thereby forcing St. Albans to join DMS to access fluid Grade A bottling plants; e) DFA orchestrated a stock and CEO exchange between NDH and Hood in order to transfer bottling plants to, obtain an ownership interest in and enter

GRAVEL AND SHEA
A PROFESSIONAL CORPORATION
P. O. BOX 369
BURLINGTON, VERMONT
05402-0369

- 61 -

into supply agreements with Hood; f) Defendants forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk bottling plants; g) Defendants forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk balancing plants; h) Defendants purchased fluid Grade A milk bottling plants, closed down fluid Grade A milk bottling plants and/or have refused to operate fluid Grade A milk bottling plants with the purpose and intent of further stifling competition in the Northeast; i) Defendants cut off Northeast dairy farmer's access to fluid Grade A milk bottling plants in the Northeast; j) Defendants boycotted dairy farmers, cooperatives, and fluid Grade A milk bottlers that did not comply with Defendants' conspiracy in an effort to eliminate or control these entities as competitive outlets for dairy farmers' fluid Grade A milk; k) Through DMS, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast; and l) DFA and DMS established GNEMMA, and through GNEMMA, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast.

204. The agreement that Defendants has entered, maintained, renewed, and enforced with one another have had the purpose and effect of eliminating competition for the sale of fluid Grade A milk to fluid Grade A milk bottlers in the Northeast and for the purchase of fluid Grade A milk by fluid Grade A milk bottlers in the Northeast. As a result of this agreement, Plaintiffs have been forced to accept suppressed prices for sales of fluid Grade A milk to bottlers, and otherwise have been damaged as described in this Complaint. But for the conspiracy alleged herein, fluid Grade A milk prices obtained by Plaintiffs and class members in the Northeast market would have been significantly higher.

205.     The relevant geographic market is the Northeast United States, which is comprised of FMMO 1.

206.     The relevant product market consists of the market for the marketing or sales of fluid Grade A milk to, or the purchase of fluid Grade A milk by, bottling plants.

207.     As a direct and proximate result of Defendants' past and continuing violation of Section 1 of the Sherman Act, as well as Defendants' other unlawful conduct, Plaintiffs have suffered injury and damages in an amount to be proven at trial.

208.     Plaintiffs, on behalf of themselves and other members of the class, seek money damages from Defendants jointly and severally for these violations. These damages represent the additional amount Plaintiffs and other members of the class would have received for sales of Grade A milk in the absence of the violations alleged. Damages may be quantified on a classwide basis. These actual damages should be trebled under Section 4 of the Clayton Act. 15 U.S.C. § 15.

209.     Plaintiffs, on behalf of themselves and other members of the class, also seek injunctive relief. The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

## COUNT VIII
## AGRICULTURAL FAIR PRACTICES ACT VIOLATION

210.     Plaintiffs incorporate by reference paragraphs 1 through 139 as if fully alleged herein.

211.     In violation of 7 U.S.C. 2303(a), Defendants unlawfully coerced dairy farmers in the Northeast into joining DFA or DMS, and into refraining from joining independent dairy cooperatives or remaining as independent dairy farmers, and Defendants refused to deal with

dairy farmers for joining independent dairy cooperatives or remaining as independent dairy farmers.

212.   In violation of 7 U.S.C. 2303(b), Defendants unlawfully discriminated against dairy farmers in the Northeast with respect to price and quantity because of the dairy farmers' membership in or contract with an independent dairy cooperative or the diary farmers' status as an independent dairy farmer.

213.   In violation of 7 U.S.C. 2303(c), Defendants unlawfully coerced dairy farmers in the Northeast to enter into and maintain a membership agreement or marketing contract with DFA or DMS, and unlawfully coerced dairy farmers in the Northeast to terminate membership agreements or marketing contracts with independent dairy cooperatives.

214.   In violation of 7 U.S.C. 2303(d), Defendants unlawfully provided access to bottling plants and compensation from the sale of fluid Grade A milk to dairy farmers for refusing or ceasing to belong to an independent dairy cooperative or for refusing or ceasing to be an independent dairy farmer.

215.   In violation of 7 U.S.C. 2303(f), Defendants unlawfully conspired, combined, agreed or arranged with each other to violate 7 U.S.C. 2303(a), (b), (c), and (d).

216.   Defendants' unlawful conduct that violates 7 U.S.C. 2303(a), (b), (c), (d) and (f) includes, but is not limited to, the following acts: a) DFA created DMS with Dairylea to bring non-DFA members under DFA's control; b) With the assistance of DFA, which purchased 11 of Dean and Suiza's divested bottling plants, Dean and Suiza merged to form the largest process in the Northeast; c) Dean, DFA and DMS entered into and implemented long-term full-supply agreements to control Northeast dairy farmers' access to fluid Grade A milk bottling plants; d) Dean paid Stop & Shop to close down its bottling plant, thereby forcing St. Albans to join DMS

to access fluid Grade A milk bottling plants; e) DFA orchestrated a stock and CEO exchange between NDH and Hood in order to transfer bottling plants to, obtain an ownership interest in and enter into supply agreements with Hood; f) Defendants forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk bottling plants; g) Defendants forced Northeast dairy farmers to market their fluid Grade A milk through DFA or DMS to gain access to fluid Grade A milk balancing plants; h) Defendants purchased fluid Grade A milk bottling plants, closed down fluid Grade A milk bottling plants and/or have refused to operate fluid Grade A milk bottling plants with the purpose and intent of further stifling competition in the Northeast; i) Defendants cut off Northeast dairy farmer's access to fluid Grade A milk bottling plants in the Northeast; j) Defendants boycotted dairy farmers, cooperatives, and fluid Grade A milk bottlers that did not comply with Defendants' conspiracy in an effort to eliminate or control these entities as competitive outlets for dairy farmers' fluid Grade A milk; k) Through DMS, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast; and l) DFA and DMS established the GNEMMA, and through GNEMMA, DFA depressed, fixed and stabilized prices for fluid Grade A milk paid to DFA members, independent dairy cooperatives and independent dairy farmers in the Northeast.

217.    Plaintiffs, on behalf of themselves and other members of the class, seek money damages from Defendants jointly and severally for these violations. These damages represent the additional amount Plaintiffs and other members of the class would have received for sales of Grade A milk in the absence of the violations alleged. Damages may be quantified on a classwide basis.

218. Plaintiffs, on behalf of themselves and other members of the class, also seek injunctive relief. The violations set forth above and the effects thereof are continuing and will continue unless injunctive relief is granted.

**JURY DEMAND**

**Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. Pro. 38(b) of all issues triable of right by jury.**

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. Declare this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure, and declare Plaintiffs Al-Lens Farm, Garret Sitts and Ralph Sitts to be Class Representatives for the Class.

B. Adjudge and declare that Dean, DFA, DMS, and Hood have engaged in unlawful conduct in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 12;

C. Preliminarily and permanently enjoin Defendants from violating Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2;

D. Declare null and void the full-supply agreements by and between Dean, Hood, DMS and DFA as described herein;

E. Preliminarily and permanently enjoin Dean, DFA, DMS and Hood, and/or any entity controlled by any of them from entering into full-supply agreements as described herein;

F. Order Dean, Hood and DFA, their subsidiaries or joint ventures to divest fluid Grade A milk bottling plants necessary to restore competition in the Northeast;

G. Order Dean, Hood and DFA, their subsidiaries or joint ventures to divest fluid Grade A milk balancing plants necessary to restore competition in the Northeast;

H. Order DFA and DMS to submit to an independent accounting of its books, including all revenues, profits, expenses, assets and liabilities incurred, received, paid, or otherwise recorded during the entirety of the Class Period;

I. Declare that DFA is outside the scope of the Capper-Volstead Act's grant of antitrust immunity;

J. Against all Defendants, jointly and severally, award Plaintiffs and the proposed class damages in an amount to proven at trial, to be trebled with interest and the costs of this suit, including attorneys' fees; and

K. Award such further relief, including structural remedies, as the Court deems just and proper.

Dated:   Burlington, Vermont
October 8, 2009

Andrew D. Manitsky, Esq.
Gravel and Shea, A Professional Corporation
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
amanitsky@gravelshea.com

- and –

Benjamin D. Brown, Esq.
Daniel A. Small, Esq.
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
(202) 408-4600
bbrown@cohenmilstein.com
dsmall@cohenmilstein.com

J. Douglas Richards, Esq.
George F. Farah, Esq.
Cohen Milstein Sellers & Toll, PLLC
150 East 52nd Street
Thirtieth Floor
New York, NY 10022
(212) 838-7797
drichards@cohenmilstein.com
gfarah@cohenmilstein.com

*Counsel for Plaintiffs
and the Proposed Class*